IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| GINGER PACK LOPEZ, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | 1:18CV641 |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Ginger Pack Lopez brought this action to obtain review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income. The Court has before it the certified administrative record and cross-motions for judgment.

### I. PROCEDURAL HISTORY

Plaintiff filed applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") alleging disability beginning April 2014. (Tr. at 234–51, 267.) For the purposes of DIB, Plaintiff's date last insured is December 31, 2016. The applications were denied initially and upon reconsideration. (*Id.* at 115, 132.) After a hearing, the Administrative Law Judge ("ALJ") determined on January 26, 2017 that Plaintiff was not disabled under the Act. (*Id.* at 11–25.) The Appeals Council denied a request for review, making the ALJ's decision the final decision for purposes of review. (*Id.* at 1–6.)

**II. STANDARD FOR REVIEW**

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that she is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

**III. THE ALJ'S DECISION**

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 12.) The ALJ next found the following severe impairments at step two: multiple sclerosis, obesity, and intermittent tendonitis of the achilles tendon, but that other medically determinable impairments were not severe, including anxiety and depression. (*Id.* at 13–16.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 17–19.)

The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that she could perform the following:

sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she will need to stand for two to three minutes every sixty to ninety minutes and she can only occasionally stoop and climb stairs; she can crouch, crawl, and kneel less than occasionally, which is less than one to two times per day; and she can never climb ladders. The claimant should not be exposed to hazards such as unprotected heights or moving machinery, and she should work in a temperature controlled environment, especially one without excessive heat. The claimant further has the ability to carry out both simple and detailed tasks, but not complex ones, and the job should not be stressful in terms of pace, demands, or work-related judgments. Finally, the claimant should have limited public contact, and her interaction with others should be occasional and on a basic level.

(Tr. 17.) At the fourth step, the ALJ determined that Plaintiff had no past relevant work. (*Id.* at 20.) Last, at step five, the ALJ concluded that there were jobs in the national economy that Plaintiff could perform. (*Id.* at 20–21.)

**IV. ISSUES AND ANALYSIS**

Plaintiff argues the following assignment(s) of error: (1) The ALJ's step five determination is not supported by substantial evidence; (2) Plaintiff's mental RFC determination is unsupported by substantial evidence; and (3) the ALJ's credibility determination is unsupported by substantial evidence. (Document Entry 8 at 1.) For the following reasons, Plaintiff has failed to identify any material error.

**A. The ALJ's Step Five Determination Is Supported by Substantial Evidence.**

Plaintiff contends that the ALJ's fifth step finding is not supported by substantial evidence, because that finding relies on the Vocational Expert's ("VE") testimony that apparently conflicts with the Dictionary of Occupational Titles ("DOT") and the ALJ never resolved the apparent conflict(s). (*See* Document Entry 8 at 5.) More specifically, Plaintiff explains that the ALJ restricted her to sedentary work, with limited public contact and only

occasional "basic" interaction with others. Despite those limitations, the VE testified that Plaintiff can perform occupations such as inspector, packer or charge account clerk. Plaintiff asserts that the VE's testimony conflicts with the DOT's descriptions of the mentioned occupations for several reasons, none of which amounts to reversible error.

To decide whether the Commissioner has met her fifth-step burden, the ALJ looks "primarily" to the DOT. *Keller v. Berryhill*, No. 17-2248, 2018 WL 6264813, at *2–3 (4th Cir. Nov. 29, 2018) (unreported); *See also Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015). The ALJ may also, however, rely on VE opinion evidence—commonly provided by way of testimony at the ALJ hearing—"to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy." *See id.* (internal quotation marks omitted).

At times, a VE's testimony that a claimant can perform a certain occupation may conflict, or seem to conflict, with the DOT's description of the physical or mental requirements for that occupation. In those circumstances, the ALJ has the responsibility to identify and resolve any such conflict. *Keller*, 2018 WL 6264813, at *2, *see also* Social Security Ruling 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). Social Security Ruling 00-4p provides that the ALJ has "an affirmative responsibility to ask [the VE] about any possible conflict" between the VE's testimony and the DOT. *See id.* If there appears to be a conflict, the ALJ must "obtain a reasonable explanation [from the VE] for th[at] apparent conflict." *Id.* Ruling 00-4p further requires that the ALJ explain her resolution of an apparent conflict before relying on the VE's testimony to support the denial of a benefits claim. *Id.*

4

### Sedentary Inspection and Sedentary Packing

At the hearing, the VE opined that Plaintiff could perform "sedentary inspection" and "sedentary packing" jobs by referencing "DOT 784.687-042" and "DOT 715.784–026," respectively, describing the occupation as "SVP specific vocational preparation 2 and sedentary." (Tr. 97; *see also* Inspector/Packer," DOT 784.687-042, 1991 WL 680982.) In the DOT, "784.687-042" is classified as "light work" in the field of "Inspecting-Measuring-Testing." *See* "Inspector/Packer," DOT 784.687-042, 1991 WL 680982. However, the code "715.784–026" does not yield to any job in the DOT.

With respect to the "inspector" position, Plaintiff asserts that an apparent conflict exists because the occupation is defined as a light duty job, and the ALJ did not explain how Plaintiff would be capable of performing that job considering her limitation to sedentary work. (Document Entry 8 at 6.) With respect to the "sedentary packing" job, Plaintiff argues that the Selected Characteristics of Occupations ("SCO") shows that there are only two packing jobs at the sedentary exertional level (but does not cite to either position), and the VE did not offer testimony on these jobs; therefore, the ALJ erred by relying on an "non-existent" job at step five. (Document Entry 8 at 6-7.) Plaintiff's contentions are without merit.

The Commissioner correctly points out that the VE's misstatement of the DOT numbers assigned for the jobs listed above amounts to harmless error, and the correct DOT codes assigned to those jobs are consistent with the VE's testimony. (Document Entry 11 at 6.) The Fourth Circuit has previously found harmless error in cases where the VE misstated DOT codes, but the DOT otherwise contained jobs with the same "substantive characteristics" of the jobs identified by the VE in the hearing. *See, e.g., Fisher v. Barnhart*, 181

F. App'x 359, 367 (4th Cir. 2006). The Commissioner correctly points out that the DOT contains a specific sedentary job in the field of "Inspecting-Measuring-Testing" with the number "734.687-042" (emphasis added) and an SVP of 2. *See* "Button Reclaimer," DOT 734.687-042, 1991 WL 679956; *see also Barron v. Astrue*, No. EDCV 10-1075-MLG, 2011 WL 321998, at *3 (C.D. Cal. Jan. 26, 2011) (citing the "Button Reclaimer" DOT code but referring to the job as "product inspector"). Changing the digit from "7**8**4.687–042" to "7**3**4.687–042" yields a job entry that has substantive characteristics that are identical to the job identified in the VE's testimony. (*Compare* Tr. 97, *with* DOT 734.687–042); *see also Fisher*, 181 F. App'x at 367.

For the reasons stated above, the Court also finds no reversible error with respect to the "sedentary packing" position. Although the VE misstated the job title and the code at the hearing, the DOT nonetheless contains "sedentary packing" jobs that comport with the VE's testimony; all with an SVP of 2 that Plaintiff could perform. *See* "Bander, Hand," DOT 920.687–030, 1991 WL 687968; *see also* "Carding–Machine Operator," DOT 681.685–030, 1991 WL 678151. "An erroneous citation to the [DOT] is not per se reversible error."[1] *Fisher*, 181 F. App'x at 367 (quoting *Burns v. Barnhart*, 312 F.3d 113, 128 (3d Cir. 2002)). In sum, the VE's testimony with respect to the inspector and packing positions does not conflict with the DOT.

---

[1] The Fourth Circuit is reluctant to apply SSR 00–4p to situations in which the VE's testimony amounts to a citation error. *See, e.g., Fisher*, 181 F. App'x at 366–67 ("The Ruling states that it governs 'conflicts in occupational information,' not erroneous job titles and codes… An ALJ's decision or a vocational expert's testimony could hardly provide a reasonable explanation for citing to an erroneous Dictionary entry. Reasoning that an ambiguous ruling only applies where its remedy is not meaningless, we would be inclined to conclude that Social Security Ruling 00–4p is not even implicated by the vocational expert's mistake in Fisher's case.").

6

## Charge Account Clerk

With respect to the "charge account clerk" occupation, Plaintiff argues that an apparent conflict exists between the DOT's description of the job and the VE's testimony, because the job calls for more public interaction than what Plaintiff's RFC accounts for. (Document Entry 8 at 7.) Although the Court agrees with Plaintiff's argument, the conflict amounts to harmless error.

In *Pearson v. Colvin*, the Fourth Circuit confirmed that Ruling 00-4p requires an ALJ to independently identify "apparent" conflicts between a VE's testimony and the DOT. *See* 810 F.3d at 209. The Court held that an apparent conflict exists when the VE's testimony "seems to, but does not necessarily, conflict with the [DOT]." *Id.* It also specified that, "if the ALJ does not elicit [an] explanation [for an apparent conflict], then the [VE's] testimony cannot provide substantial evidence to support the ALJ's decision." *Id.; see also Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014) (explaining that, if Commissioner relies only on VE testimony at the fifth step, and when an unresolved apparent conflict exists between that testimony and the DOT, then Commissioner has not met her burden of proof).

Here, the VE testified that Plaintiff could perform the occupation of "charge-account clerk" (DOT: 205.367–014). (*See* Tr. 97.) The duties for this position entail "[i]nterview[ing] customers applying for charge accounts," "[c]onfer[ring] with the customer to explain what type of charge plans available," "[a]ssist[ing] customer in filling out application or complet[ing] application for [the] customer," and "[c]heck[ing] reference by phone or form letter any notify customers of acceptance or rejection of credit." *See generally* "Charge–Account Clerk," DOT 205.367–014, 1991 WL 671715. In addition, the DOT indicates that speaking with people is

7

"significant" and the claimant may talk "frequently." *Id.* Plaintiff correctly points out that the DOT's description of this job at the very least appears to conflict with the RFC that limits her to "limited public contact" and "occasional, 'basic level' interactions with others." (*See* Document Entry 8 at 7.) In addition, the ALJ did not inquire of the VE whether his testimony was consistent with the DOT. However, as the Commissioner correctly points out, the error is harmless at best.

Assuming *arguendo* that an apparent, unresolved conflict exists between the "charge-account clerk" occupation and the VE's testimony, the findings at step five are nonetheless supported by substantial evidence. "[T]he ALJ only needs to identify one job that [a claimant] can perform, given his RFC and vocational capabilities, that exists in the national economy in significant numbers." *Cole v. Colvin*, No. 1:13CV868, 2014 WL 4060145, at *4 (M.D.N.C. Aug. 14, 2014) (citing 20 C.F.R. § 404.1566(b)). Here, the ALJ found that Plaintiff could perform sedentary inspection and sedentary packing with at least 175,000 jobs in existence in the national economy for the sedentary inspection job alone. (Tr. at 97.) The Fourth Circuit has previously found that 110 jobs is not an insignificant number, *Hicks v. Califano*, 600 F.2d 1048, 1051 n. 2 (4th Cir.1979), so 175,000 is more than sufficient. *See Cole*, 2014 WL 4060145, at *4 (2500 jobs is significant); *see also Harmon v. Apfel*, 168 F.3d 289, 291–92 (6th Cir. 1999) (700 jobs within 75–mile radius of claimant's home is significant number). In sum, the ALJ's step five determination is supported by substantial evidence.

**B. Plaintiff's Mental RFC Is Supported by Substantial Evidence.**

Next, Plaintiff relies on *Mascio v. Colvin,* 780 F. 3d 638 (4th Cir. 2015) to support her argument that the ALJ did not explain how the evidence supported Plaintiff's mental

8

limitations in her RFC. (Document Entry 8 at 9.) At step two, the ALJ found that Plaintiff has the following degrees of limitation: mild limitations in understanding, applying, and remembering information; mild limitations in adapting and managing oneself; no limitations in interacting with others and no limitations in concentration, persistence, and pace. (Tr. 14.) Relevant to the ALJ's finding, the Plaintiff was restricted to "simple and detailed tasks, but not complex ones, the job should not be stressful in terms of pace, demands, or work–related judgments . . . limited public contact, and interaction with others should be occasional and on a basic level." (Tr. 17.) More specifically, Plaintiff argues that the ALJ did not explain based on the evidence how Plaintiff could perform the activities as stated in the RFC; nor did the ALJ define what she meant by "complex" tasks or interaction on a "basic" level. For the following reasons, Plaintiff has failed to identify any material error.

"[T]he process for assessing [the] RFC is set out in Social Security Ruling 96–8p." *Monroe v. Colvin*, 826 F.3d 176, 187 (4th Cir. 2016) (*citing Mascio v. Colvin*, 780 F.3d at 636). "[T]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" including the functions listed in the regulations. SSR 96–8P, 1996 WL 374184, at *1. "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." *Monroe*, 826 F.3d at 179 (internal quotations and citations omitted). The Fourth Circuit has also addressed whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. *Mascio*, 780 F.3d at 636–37. In *Mascio* the Court stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested." *Id.* at 636. However, "remand may be

9

appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* In addition, "[a]n ALJ may satisfy the function-by-function analysis requirement by referencing a properly conducted analysis of state agency consultants." *Herren v. Colvin*, No. 1:15-CV-00002-MOC, 2015 WL 5725903, at *5 (W.D.N.C. Sept. 30, 2015) (unpublished) (collecting cases).

Here, the ALJ adequately discussed Plaintiff's mental limitations—or the lack thereof—and properly accounted for those limitations in the RFC. First, this matter does not trigger *Mascio,* as this case concerns findings of either no to mild limitations at the most. *See generally Hardy v. Berryhill*, No. 3:16-CV-00746-FDW, 2018 U.S. Dist. LEXIS 44434, at *16 (W.D.N.C. Mar. 19, 2018) (citing *Barnes v. Berryhill*, No. 5:17-CV-00052-RJC, 2018 U.S. Dist. LEXIS 27705, 2018 WL 1004746, at *1 (W.D.N.C. Feb. 21, 2018) (citing *Brooks v. Berryhill*, No. 3:15-CV-00440-RJC, 2017 U.S. Dist. LEXIS 46724, 2017 WL 1196449, at *4 (W.D.N.C. Mar. 29, 2017)) (holding that "*Mascio* dealt with 'moderate' restrictions and did not hold that all restrictions, including mild restrictions, be explicitly discussed in terms of RFC."); *Gilbert v. Berryhill*, No. 5:16-CV-00100-MOC, 2017 U.S. Dist. LEXIS 46723, 2017 WL 1196452, at *3 (W.D.N.C. Mar. 29, 2017) (findings that *Mascio* did not apply to cases of mild difficulties); *Roberson v. Colvin*, No. 3:15-CV-00570-MOC, 2016 U.S. Dist. LEXIS 137651, 2016 WL 5844148, at *6 (W.D.N.C. Oct. 4, 2016) (finding that, because the case "concerns only 'mild difficulties,' it [did not] trigger the RFC discussion requirements of *Mascio* per se.")); *But see Reinhardt v. Colvin*, 2015 U.S. Dist. LEXIS 50952 (W.D.N.C. April 17, 2015) (finding that *Mascio* applies where the ALJ omitted metal impairment when creating RFC, despite finding mental

10

limitations as non-severe).

In addition, the ALJ properly considered the opinions of the state agency psychological consultants. The ALJ considered the opinion of Dr. Renee Hinson, who conducted a consultative examination. Dr. Hinson opined that during the assessment Plaintiff retained the ability to perform simple, repetitive tasks, had good interpersonal behavior, had the ability to tolerate stress and pressures associated with day-to-day work, had good concentration, persistence, and pace, and was capable of cooperating with authority figures. (Tr. at 16 referencing 523.) The ALJ also adequately explained why she gave "partial weight" to the state agency consultants at the initial and reconsideration level, Dr. Keith Nobles, Ph.D. and Dr. Jacquelyn Harrison, Ph.D., respectively. Both doctors found that Plaintiff was moderately limited in CPP. However, the ALJ did not adopt these findings because the evidence suggested no limitation. The ALJ pointed to evidence of Plaintiff's consultative exam where she indicated that she watches TV, plays video games, manages household funds, uses the internet, and attends church regularly (*See* Tr. 15 referencing 287, 521–22.) In addition, the ALJ noted that Plaintiff computed serial 3s and 7s successfully, and she only had mild problems recalling digits backwards. (*See* Tr. 15 referencing 523.) In addition, the ALJ noted that Plaintiff testified that she was able to work despite her mental impairments, because "for the most part, the medication worked." (Tr. 15 referencing 85.)

Plaintiff's arguments to the contrary are unpersuasive. Plaintiff has not shown why the terms "complex" or "basic" warrant explanation beyond their common meanings. *See Powe v. Astrue*, No. 2:12-CV-01116-RDP, 2013 WL 3153536, at *8 (N.D. Ala. June 18, 2013) ('[the court] finds no legal authority in the SSR or in case law that requires the ALJ to define every

11

statement in his RFC determination in terms of fractional units."). Lastly, Plaintiff does not point to evidence indicating that she would likely have problems carrying the limitations set forth in her RFC, nor does Plaintiff explain what additional limitation she believes she is entitled to in her RFC determination. *See Lockard v. Berryhill*, No. 1:17CV358, 2018 WL 4565992, at *6 (M.D.N.C. June 8, 2018), *report and recommendation adopted*, No. 1:17CV358, 2018 WL 3574883 (M.D.N.C. July 25, 2018); *see also Webb v. Berryhill*, No. 1:17CV341, 2018 WL 2198829, at *14 (M.D.N.C. May 14, 2018), *report and recommendation adopted*, No. 1:17CV341, 2018 WL 2583113 (M.D.N.C. June 4, 2018) (Court held that plaintiff failed to show how a moderate limitation in social functioning should have further impacted the ALJ's RFC beyond the limitations listed). In sum, the ALJ's mental RFC determination is supported by substantial evidence.

### C. The ALJ's Analysis of Plaintiff's Subjective Complaints Is Well-Supported.

Plaintiff next contests the ALJ's assessment of her subjective complaints. (Docket Entry 15 at 9–10.) A two-part test governs the evaluation of a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)).

If such an impairment exists, the second part of the test then requires an ALJ to consider all available evidence, including the claimant's statements about pain, in order to determine whether the claimant is disabled. *Id.* at 595–96. While the ALJ must consider a

12

claimant's statements and other subjective evidence at step two, he need not credit them if they conflict with the objective medical evidence or if the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id.* Where the ALJ has considered the relevant factors, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), and heard the claimant's testimony and observed her demeanor, the ALJ's determination regarding Plaintiff's subjective complaints is entitled to deference. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Here, the ALJ completed the two-step *Craig* analysis. First, the ALJ stated that he had carefully considered the evidence and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 18.) The ALJ therefore discharged her duty under the first step of the *Craig* analysis. Next, at step-two, the ALJ decided that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*) The ALJ then provided reasons, backed by substantial evidence, to credit Plaintiff's subjective claims less than fully. By way of non-exclusive example, the ALJ explained that the medical evidence, which she discussed throughout the decision, was inconsistent with Plaintiff's claims of incapacitating limitations. (Tr. 18–20); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

With respect to Plaintiff's multiple sclerosis, the ALJ acknowledged that Plaintiff had MRI results consistent with demyelinating disease. (Tr. 18 referencing 368.) However, the ALJ pointed to follow-up examinations indicating normal cognitive functions, among other normal results. (Tr. 18 referencing 475, 478, 609, 614; 622, 629, 637, 641, 644.) In addition, the ALJ acknowledged that Plaintiff experienced several flare-ups during the relevant period,

13

the last one being in 2016. However, the ALJ noted that Plaintiff's MRI results in 2015 and 2016 had not worsened since her first MRI in 2014. (Tr. 18 referencing 618, 625, 653.) Furthermore, Plaintiff underwent infusion therapy for treatment. (*See* Tr. 18.) With respect to Plaintiff's vision complaints, the ALJ pointed to evidence indicating no evidence of optic damage, normal optic nerves and normal visual fields. Plaintiff was recommended to use artificial tears on a regular basis. (Tr. 18 referencing 608.)

Next, with respect to the Plaintiff's tendonitis of the Achilles tendon, the ALJ pointed to evidence that indicated normal gait and normal ambulation, (*See* Tr. at 18, referencing 335, 458, 478, 622), despite tenderness in her Achilles at a follow-up visit, (Tr. 18 referencing 495), and a history of chronic bone spurs and Haglund's deformity in the affected foot. (*Id.*) The ALJ also pointed to evidence that suggest Plaintiff's obesity does not interfere with her ability to ambulate, as she has presented with normal gait at her appointments. (Tr. 19 referencing 475, 478, 609, 614, 622, 629, 637, 641, 644.) In addition, the ALJ pointed to evidence that supports her conclusion that although Plaintiff reported numerous physical limitations, she also reported normal activities of daily living. (Tr. 19 referencing 284–87, 521–22.) Lastly, the ALJ further observed that Plaintiff reported a need for a cane, but her treatment provider did not prescribe this. (*See* Tr. 19.)

Plaintiff's arguments to the contrary are unpersuasive. Plaintiff vaguely points to her testimony as well as her medical reports of blurred vision, fatigue, muscle cramping (symptoms of either her multiple sclerosis or tendinitis of her right shoulder), painful weightbearing and limited range of motion, having to use a wheelchair, and difficulty using her hands. (Document Entry 8 at 13–14.) Yet, Plaintiff does not acknowledge that the ALJ pointed to

14

substantial evidence demonstrating that she performed her activities of daily living, that she frequently exhibited a normal status (physical and mental), and that her condition stabilized with treatment. Again, these are all good reasons for partially discounting Plaintiff's subjective complaints of disabling limitations. Accordingly, the ALJ's assessment of Plaintiff's subjective complaints is both legally correct and supported by substantial evidence. For all these reasons, Plaintiff has failed to demonstrate material error.

## V. CONCLUSION

For the reasons stated herein, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment Reversing the Commissioner (Docket Entry 7) be **DENIED**, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 10) be **GRANTED**, and that the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

April 8, 2019